UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

PIRU UMOJA,

                              Petitioner,                **ORDER ADOPTING REPORT**
                                                                           **AND RECOMMENDATION**
                            v.                                  11 CV 0736 (PKC) (LB)

PATRICK GRIFFIN, Superintendent,

                              Respondent.

-----------------------------------------------------------------x

PAMELA K. CHEN, United States District Judge:

## I.    INTRODUCTION

       Petitioner Piru Umoja ("Petitioner"), acting *pro se,* petitions the Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter was referred to the Honorable Lois Bloom, United States Magistrate Judge, for a Report and Recommendation, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.1(d). In the Report and Recommendation, issued April 7, 2014, Judge Bloom recommends that the Court (a) deny the petition for a writ of habeas corpus in its entirety; (b) decline to issue a certificate of appealability; and (c) certify that any appeal from the Court's judgment would not be taken in good faith. *See* Report & Recommendation (Dkt. 25) at 31. On April 21, 2014, Petitioner filed objections to Magistrate Bloom's Report and Recommendation. *See* Objections to Report & Recommendation (Dkt. 26). Finding no merit to Petitioner's objections and no error in Judge Bloom's thorough and well-reasoned decision, the Court adopts the Report and Recommendation in its entirety.

## II.     STANDARD OF REVIEW

When a party objects to a magistrate judge's report and recommendation, the district court makes a *"de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *See* 28 U.S.C. § 636(b)(1)(C); *Martinez v. Senkowski*, 6:97-CV-0624 (FJS) (GLS), 2000 WL 888031 (N.D.N.Y. June 28, 2000) (district court "must review *de novo* those issues upon which a party has raised *specific* objections to a Magistrate Judge's Report–Recommendation.") (citing 28 U.S.C. § 636(b)(1); *Grassia v. Scully,* 892 F.2d 16, 19 (2d Cir.1989)).  However, "[g]eneral or conclusory objections, or objections which merely recite the same arguments presented to the magistrate judge, are reviewed for clear error."  *O'Diah v. Mawhir*, 08-CV-322 (TJM) (DRH), 2011 WL 933846, at *1 (S.D.N.Y. March 16, 2011) (citing *Farid v. Bouey,* 554 F.Supp.2d 301, 306 n. 2 (N.D.N.Y.2008)); *Frankel v. N.Y.C.,* 2009 WL 465645, at *2 (S.D.N.Y. Feb. 25, 2009); *Martinez*, 2000 WL 888031, at *3.  "After reviewing the report and recommendation, the Court may 'accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.'"  28 U.S.C. § 636(b)(1)(C); *O'Diah*, 2011 WL 933846, at *2 (quoting 28 U.S.C. § 636(b)(1)(C)).

## III. Analysis

Petitioner raises five objections to Judge Bloom's Report and Recommendation ("R&R"), in sum and substance:

1. The R&R incorrectly states that the jury only heard about the robbery of the Irene's Beauty Salon in the prosecution's opening statement, when, in fact, the prosecution introduced forensic evidence relating to that robbery (Dkt. 26 at 1-2);

2. The prosecution engaged in misconduct when it introduced the fingerprint evidence relating to the SCK 99 Cent store robbery, knowing that it would have to dismiss that robbery charge (*id*. at 2-4);

3. The R&R erroneously states that the two eyewitnesses to the Irene's Beauty Salon robbery testified at trial to identifying Petitioner in two separate line-ups, one on November 18, 2004 and the other on December 9, 2004, when, in fact, Petitioner was only in the December 9, 2004 line-up (*id*. at 4-5);

4. The R&R erroneously concludes that the State court properly refused to re-open the *Wade* hearing after an eyewitness to one of the robberies testified at trial that he and the other eyewitness to the robbery had viewed Petitioner's photo array together (*id*. at 5);

5. The prosecution intentionally withheld from the defense 911 tapes that prove Petitioner's "actual innocence" (*id*. at 5-7).

A.  <u>Objection 1: Evidence Jury Received about the Irene's Beauty Salon Robbery</u>

Petitioner objects to the second footnote in the R&R, which states that "As discussed herein, because neither witness to [the Irene's Beauty Store] robbery testified at trial and the charges were ultimately dismissed, the jury only heard about this robbery in the prosecution's opening statement." Petitioner asserts that this statement is incorrect because the prosecution presented "Forensic witnesses" from whom the prosecution "elicited testimony in reference to the Irene's Beauty Salon robbery." (Dkt. 26 at 1.)

Petitioner's assertion, however, is incorrect. No fingerprint evidence or forensic witness testimony relating to fingerprints taken at the Irene Beauty Store was introduced at trial. The only fingerprint evidence and testimony that was admitted, but later withdrawn, related to the SCK 99 Cent store robbery. (Dkt. 8-4 at 357-363; Dkt. 8-5 at 409-431) (Trial Transcript or "T").[1] Thus, there is no error in the R&R regarding this issue.

---

[1] In his objection, Petitioner cites to the same portions of the trial transcript; however, the record does not bear out his claim that any fingerprint evidence or testimony relating to the Irene Beauty Store robbery was introduced at trial. Petitioner also cites to pages 431-453 of the trial

3

B.     <u>Objection 2: Prosecutorial Misconduct Based on the Introduction of SCK 99 Cent Store Fingerprint Evidence</u>

Petitioner asserts that the prosecution engaged in misconduct because it "knew in advance of presenting the forensic witnesses [who testified about the SCK 99 Cent store fingerprint evidence] that [it] would later have to concede to the dismissing of such prejudicial evidence provided for the jury to view." (Dkt. 26 at 3.) However, the record does not support Petitioner's assertion.

As noted in the R&R, at trial, the prosecution expressed its hope that the witness to the SCK 99 Cent store robbery, Kimmy McLeod, would eventually agree to testify. (Dkt. 25 at 12, n. 12 (citing T. 293).) As the prosecution explained to the court the morning that Ms. McLeod was scheduled to testify, which was Monday, December 5, 2005:

> [Prosecutor]: . . . . Judge, we were anticipating calling Kimmy McCleod during the trial. Hopefully, we were going to call her today. I met with Ms. McCleod alone because she told me that she was afraid, on *Friday*, at a place where she felt comfortable meeting. And she informed me that she did not want to testify because she was afraid and because the defendant called her at the 99 cent store. Well, she thought the defendant called her at the 99 cent store. She didn't know the defendant and didn't recognize his voice. So I had to check to see whether or not the defendant had actually called her at the 99 cent store. So we checked the defendant's phone records. We found that on December ninth of 2004, it looks like 11: 30 in the morning, the defendant actually did call the 99 cent store. We're pursuing this matter, judge. We're not ready to begin a hearing or make -- give the Court further information with regard to her availability at this point. But it's something that we will continue to keep the Court informed of.

(Dkt. 8-4 at 292-293 (emphasis added).) The first of the two fingerprint witnesses, Officer Timothy Hanley, testified that afternoon. (*Id*. at 347-63.)[2] Thus, the record demonstrates that

---

transcript, but these portions consist of colloquy between the trial judge and attorneys on different subjects, and are unrelated to the fingerprint witnesses.

[2]   Officer Hanley, who was the last witness to testify that day, presumably was able to do so, in part, because of the unexpected unavailability of Ms. McLeod that morning.

at the time the prosecution introduced the fingerprint evidence, it had only recently learned of Ms. McLeod's reluctance to testify and still hoped to call her as a witness.

Furthermore, as found by the State appellate court and affirmed by Judge Bloom in the R&R, the prosecution's references in its opening statement to the SCK 99 Cent store fingerprint evidence that was eventually struck did not violate Petitioner's right to due process. *People v. Umoja*, 70 A.D.3d 867 (2d Dep't 2010); Dkt. 25 at 26. Indeed, given the unexpected and late-developing nature of the situation with respect to Ms. McLeod, it was reasonable for the trial court to permit the prosecution to proceed with its case and offer the SCK 99 Cent store fingerprint evidence "subject to connection," *i.e.*, the testimony of Ms. McLeod. (Dkt. 8-4 at 320) (trial court explaining, in response to defense's objection to the fingerprint evidence testimony, that the evidence would be admitted "[s]ubject to connection, and it seems to me if they don't offer anybody to testify about a robbery, then we can delete it."). Thus, this objection does not provide a basis for rejecting or modifying the R&R.[3]

### C. Objection 3: The Irene's Beauty Salon Robbery Eyewitnesses Did Not Identify Petitioner in a Line-up on November 18, 2004

Petitioner objects to the R&R on the basis that it erroneously states that the two eyewitnesses to the Irene's Beauty Salon robbery, Virginia Mota and Marie Dume, testified at trial that they identified Petitioner in two separate line-ups, one on November 18, 2004 and the

---

[3] As part of this argument, Petitioner asserts that the prosecution was required, but failed, to prove that Ms. McLeod was unavailable as a result of Petitioner's conduct. (*Id.* at 2-3.) Petitioner, however, appears to be mistakenly relying on the concept that the prosecution must prove that a defendant "wrongfully caused" the unavailability of a witness *where* the prosecution seeks to use the witness's prior statements or testimony. *See* Fed.R.Evid. 804(b)(6) (permitting admission of a statement against a party that "wrongfully caused—or acquiesced in wrongfully causing—the declarant's unavailability as a witness"); *United States v. Aguiar*, 975 F.2d 45, 47 (2d Cir.1992) (recognizing principle of forfeiture by misconduct) (citing *United States v. Mastrangelo*, 693 F.2d 269 (2d Cir.1982)). That principle is inapplicable here since the prosecution never sought to admit Ms. McLeod's prior statements or testimony.

other on December 9, 2004, when, in fact, Petitioner was only in the December 9, 2004 line-up. (Dkt. 26 at 4-5; R&R at 10.) In its response to the objections, Respondent agrees with Petitioner that Mota and Dume only identified Petitioner at the line-up on December 9, 2004, and that at the November 18, 2004 line-up, which did not include Petitioner, the witnesses identified Petitioner's co-defendant. (Dkt. 27.) In fact, Mota and Dume testified at trial that they identified Petitioner at the December 9, 2004 line-up and his co-defendant at the November 18, 2004 line-up. (Dkt. 7-7 at 57-58, 107-09.)

Although the R&R incorrectly states that Mota and Duma identified Petitioner at both the November 18, 2004 and December 9, 2004 line-ups (Dkt. 25 at 10), this misstatement is inconsequential. The fact Mota and Duma identified Petitioner once, instead of twice, from a line-up does not undermine their credibility or the strength of their identifications. Furthermore, at trial, the evidence presented to the jury about the two line-ups was entirely accurate (Dkt. 7-7 at 57-58, 107-09), such that there is no basis for arguing that the jury was misled about the strength of Mota's and Dume's pre-trial identifications. Indeed, Mota and Dume both identified Petitioner in court at the trial. (Dkt. 7-7 at 50, 109.) In any event, neither Mota's or Dume's line-up identifications are the subject of any claim in this habeas petition.

D.   Objection 4: The Trial Judge Should Have Re-Opened the *Wade* Hearing

In his objections, Petitioner renews the claim from his habeas petition that the trial court should have re-opened the *Wade* hearing after one of the witnesses to the Miriam's Beauty Salon robbery, Elias Encarnacion, testified at trial that he had viewed the photo array together with another eyewitness to the robbery, Arelis Fabian. (Dkt. 26 at 5.) Petitioner specifically points to Encarnacion's testimony that he and Fabian were standing "right next" to each other and

6

"looking at the photos at the same time."[4] (Dkt. 26 at 5 (citing T. 397).) Petitioner argues that Encarnacion's testimony contradicted the testimony of the administering detective, who stated that the two witnesses were approximately 12 to 14 feet apart during the procedure, and that the trial court should have granted his request to reopen the *Wade* hearing to determine whether their identifications were tainted. (*Id*. at 5.) Because Petitioner made the same claim in his habeas petition, its denial is reviewed for "clear error." (Dkt. 25 at 13-14, 22-23 (discussing facts and argument related to *Wade* hearing)); *see O'Diah*, 2011 WL 933846, at *1; *Frankel,* 2009 WL 465645, at *2; *Martinez*, 2000 WL 888031, at *3.

Judge Bloom correctly rejected Petitioner's *Wade* hearing claim. As discussed in the R&R, the trial court declined to re-open the *Wade* hearing for two reasons: (1) the record did not clearly establish that Encarnacion's testimony conflicted with the detective's testimony (*see* Dkt. 25 at 22 (citing T. 531))[5]; and (2) the record did not provide "any detail that would allow this Court . . . to speculate as to whether or not there was any consultation by the witnesses or whether or not one was influenced by the other." (T. 531-32.) Although the portion of Encarnacion's testimony on which Petitioner relies is different than the testimony his trial counsel focused on in making the application to re-open the *Wade* hearing (c*ompare* Dkt. 8-5 at 389 with Dkt. 8-5 at 397), and more directly establishes a conflict between Encarnacion's and the detective's testimony, it was still reasonable for the trial court not to re-open the *Wade* hearing based on the fact there was no evidence that Encarnacion's identification of Petitioner

---

[4] Fabian did not testify at the trial. (Dkt. 25 at 23.)

[5] In arguing the motion to re-open the *Wade* hearing, Petitioner's trial counsel compared Encarcion's trial testimony that he and Fabian were "together" when they were showed the photo arrays with the detective's testimony at the *Mapp/Dunaway/Wade* hearing that Encarnacion and Fabian were in the same room, but about 12 to 14 feet away from each other, when they viewed the photo arrays. (*Compare* Dkt. 8-5 at 389 *with* Dkt. 6-4 at 247).

7

was influenced in any way by Fabian. (T. 531-32.) As Judge Bloom discussed in the R&R, "the joint viewing of a photo array by more than one witness does not necessarily constitute error." (Dkt. 23.) Where there is no evidence to support a finding of suggestiveness, there is no reason to re-open a *Wade* hearing. *Borovina v. Scully*, 583 F.Supp. 573, 575 (S.D.N.Y. 1984). Indeed, as the trial court noted, Encarnacion was the first of the witnesses at the beauty salon to make an identification from the photo array, which further undercuts the possibility that he was improperly influenced by the other witnesses. (T. 532.) Furthermore, despite having the opportunity to elicit evidence of suggestiveness from Encarnacion at the trial, Petitioner's counsel did not do so. (T. 397-400.)

Accordingly, as Judge Bloom found, in the absence of any evidence of suggestiveness with respect to Encarnacion's identification of Petitioner, the trial court's decision not to re-open the *Wade* hearing was not contrary to, or an unreasonable application of, clearly established federal law. (Dkt. 25 at 23.)

      E.     Objection 5: The Prosecution Intentionally Withheld from the Defense 911 Tapes that Prove Petitioner's "Actual innocence"

In his habeas petition, Petitioner claimed that the prosecution engaged in misconduct by referring in their opening statement to 911 tapes that were not going to be introduced at trial because, according to the prosecution, they were lost. (Dkt. 25 at 26.) Now, in his objections, Petitioner asserts, for the first time, that the prosecution actually had, but withheld, the 911 tapes because the tapes prove Petitioner's "actual innocence." (Dkt. at 26 at 5-6.) In support of this new claim, Petitioner references 911 Sprint reports that were provided to him in May 2013 by the New York City Police Department in response to Petitioner's New York State Freedom of

Information Law ("FOIL") request. (*Id*. at ECF 9.[6]) Petitioner also states that he has a pending motion, pursuant to New York C.P.L. § 440.10, before the State court, based on this claim. (*Id*. at 6 n. 10.)

This objection has no impact on the R&R before the Court. First, this objection is based on an entirely new claim, which is unexhausted. Second, it is doubtful that this new claim has any merit, since it conflates two different types of evidence: 911 Sprint reports and 911 tapes. Petitioner offers the 911 Sprint *reports* to show that the 911 *tapes* were not lost, as claimed by the prosecution. The existence of 911 Sprint reports, however, does not indicate that the corresponding tapes still exist. Furthermore, the fact that Petitioner recently obtained via a FOIL request the 911 Sprint reports does not indicate—nor does Petitioner assert—that he was not provided the 911 Sprint reports during discovery in his criminal case. In any event, the 911 Sprint reports that Petitioner attached to his objections provide no basis for concluding that the 911 tapes would have exonerated Petitioner, nor does Petitioner provide any explanation for his claim that the tapes establish his innocence.

**IV. Conclusion**

Petitioner has failed to raise any objection that warrants rejection or modification of the R&R, which the Court does not find to be erroneous. The Court, therefore, adopts the R&R in its entirety. The petition is dismissed. Because Petitioner has not made a substantial showing of the denial of any constitutional right, no certificate of appealability will be issued. 28 U.S.C. § 2253; *see Slack v. McDaniel*, 529 U.S. 473 (2005). The Court also certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith, and

---

[6] Citations to "ECF" pages refer to the page numbering of the Electronic Court Filing ("ECF") system.

therefore *in forma pauperis* status is denied for the purpose of an appeal.  *See Coppedge v. United States,* 369 U.S. 438, 444–45 (1962).

SO ORDERED:

/s/
PAMELA K. CHEN
United States District Judge

Dated: May 29, 2014
       Brooklyn, New York